

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARTHUR BRAKE and
DEANNA BRAKE,

     Plaintiffs,

v.                       CASE No. 8:10-CV-338-T-33TGW

WELLS FARGO FINANCIAL SYSTEM
FLORIDA, INC.,

     Defendant.

---

## REPORT AND RECOMMENDATION

The plaintiffs have filed a six-count amended complaint against the defendant which alleges, among other things, fraud and breach of fiduciary duty in connection with the plaintiffs' execution of a residential mortgage loan and a forbearance agreement. The plaintiffs allege that the defendant's representatives falsely represented that the defendant would modify their mortgage loan on terms favorable to them within two months after its execution and that, after refusing to honor the oral agreement, the defendant induced them into signing a forbearance agreement by falsely representing that it was in their best interest.

The defendant has filed a motion to dismiss the amended complaint in its entirety, and the plaintiffs have filed a memorandum in opposition to that motion (Docs. 44, 46). I recommend that the amended complaint be dismissed, with leave for the plaintiffs to assert a claim for breach of fiduciary duty in a second amended complaint. However, I recommend that the other five counts be dismissed with prejudice because none can be amended to state a cognizable claim.

I.

On October 10, 2007, the plaintiffs, Arthur and Deanna Brake, executed a promissory note and mortgage in favor of defendant Wells Fargo Financial System Florida, Inc., who loaned them $265,192.75 to purchase a residence in St. Petersburg, Florida (Doc. 43, Ex. A).[1] By signing the mortgage, the plaintiffs agreed to an adjustable rate loan that was to be repaid in 480 monthly installments (id., p. 1).

The plaintiffs allege that, prior to executing the loan, they had discussed with the defendant their debt issues and current financial problems, and that defendant's representatives Tim Herrmann and Bryan Harper falsely

---

[1]The plaintiffs attached to the complaint a copy of the mortgage, but not the promissory note.

told them that the mortgage was in their "best interests under their financial circumstances" and that, "if [they] signed the terms of the loan, in two months [the defendant] would modify the loan, unconditionally, on favorable terms to the [plaintiffs]" (id., ¶¶12, 14, 15, 32). The plaintiffs assert that they relied on these representations in executing the loan, but that, after two months, the defendant refused to modify the loan under favorable terms as promised (id., ¶¶19, 22). Consequently, it became difficult for them to make the mortgage payments (id., ¶23).

On February 26, 2009, the plaintiffs executed a Forbearance Agreement with the defendant, which modified the terms of the mortgage in order to bring the account, which had a past due amount, current (id., Ex. B). The agreement afforded the plaintiffs a lower monthly payment for approximately one year, after which the mortgage would be converted from a variable to a fixed interest rate loan with an extended maturity date (id., Ex. B; ¶130). The plaintiffs stated that they entered into the Forbearance Agreement because the defendant told them that it was the only option available to relieve their financial distress, and they believed they had no other choice if they did not want to lose their home (id., ¶¶25, 26, 37).

In January 2010, the month before the plaintiffs were to resume regular monthly payments under the Forbearance Agreement (id., Ex. B), the plaintiffs filed in state court a 15-count complaint against the defendant premised on the contention that they were falsely told that their original mortgage loan would be modified on more favorable terms within two months of its execution (Doc. 2). The action was removed to federal court, and the complaint was subsequently dismissed (Docs. 1, 5, 28). The plaintiffs sought leave, and were granted permission, under Rule 15(b), F.R.Civ.P., to file an amended complaint (Docs. 40, 42).

In response, the plaintiff filed a 26-page, 144-paragraph amended complaint that alleges six causes of action (Doc. 43). It does not contain any jurisdictional allegations, and each count of the complaint incorporates by reference all of the antecedent allegations. The amended complaint is known in this circuit as a "shotgun complaint," which is routinely condemned because it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." McMahon v. Cleveland Clinic Foundation Police Dept., 2011 WL 4552308 at *2 (11th Cir. 2011)(unpub. dec.) quoting Anderson v. Dist. Bd. of Trs. of Central Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996). Further, the

amended complaint contains numerous argumentative statements not germaine to pleading a cause of action (see, e.g., Doc. 43, ¶31).[2]

Notwithstanding these defects, following is a summary, as best as can be discerned, of the bases for each of the six causes of action. In count I, the plaintiffs seek a declaration that the defendant is obligated under the National Housing Act, and the regulations promulgated thereunder, to provide them troubled loan servicing counseling prior to filing a foreclosure lawsuit (Doc. 43, pp. 15-17). The plaintiffs allege in count II that the defendant was their fiduciary, and that it breached its fiduciary duty to them by "using high-pressure sales tactics" and stating falsely that it would favorably modify the mortgage after its execution (see id., pp. 17-19).

Counts III and VI allege fraud and promissory estoppel, respectively, also based on the defendant's failure to fulfill its purported oral promise to modify the plaintiffs' mortgage loan on favorable terms within two months after their execution of the loan (id., pp. 20, 25). Count IV alleges

---

[2] Therefore, at a minimum, the pleading should be dismissed, and amended to conform with Rules 8 and 10 of the Federal Rules of Civil Procedure, which require "a short and plain statement of the claim showing that the pleader is entitled to relief," with each claim "limited as far as practicable to a single set of circumstances." F.R.Civ.P. 8(a)(2), (d)(1); 10(b); see McMahon v. Cleveland Clinic Foundation Police Dept., supra (affirming dismissal without prejudice of a shotgun complaint).

that the defendant fraudulently induced them into executing a Forbearance Agreement by "advis[ing them falsely] the Forbearance Agreement was in their best interest ... and that [it] was the only option for relief of their financial distress" (id., pp. 22-23). Count V alleges that the defendant was negligent because it purportedly did not process the mortgage loan in accordance with industry standards (id., p. 24).

The plaintiffs allege that, as a result of the defendant's wrongful conduct, their credit has been harmed, and they have sustained monetary damages, including having to defend a foreclosure suit and being assessed illegal and predatory servicing charges (id., pp. 19, 23, 24, 26). The plaintiffs request a declaration that they are entitled to special servicing under the National Housing Act, recession of the promissory note and mortgage, compensatory and punitive damages, and attorneys' fees (id., pp. 17, 19, 22, 23, 25, 26).

The defendant has filed a Motion to Dismiss all counts of the complaint, arguing that the "allegations do not satisfy the elements of any of the six claims asserted in the Amended Complaint, or satisfy the statute of frauds, or comply with the Anti-Injunction Act" (Doc. 44, p. 2). The plaintiffs filed a memorandum in opposition to the motion, arguing that the

defendant cannot assert affirmative defenses in a motion to dismiss, the banking statute of frauds does not apply to their claims, and that their factual allegations are sufficient to state cognizable claims (Doc. 46). The motion was referred to me for a report and recommendation (Doc. 49).

Oral argument was subsequently conducted on the motion (Doc. 57). During oral argument, the parties advised that the foreclosure action, which the defendant initiated in state court, was being voluntarily dismissed by the parties. This action was taken at the direction of the state court judge, who stated that the state court would otherwise dismiss the claims with prejudice because there is a rule prohibiting concurrent federal and state court actions. That dismissal has been effected and, thus, there is no pending foreclosure action against the plaintiffs (Doc. 58).

## II.

A complaint may be dismissed upon motion under Rule 12(b)(6), F.R.Civ.P., for "failure to state a claim upon which relief can be granted." The United States Supreme Court has retired the standard in <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief," in favor of a stricter pleading standard. <u>Bell Atlantic Corp.</u> v. <u>Twombly</u>, 550 U.S. 544 (2007). Thus, although a complaint does not need detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do." <u>Id</u>. at 555. Rather, factual allegations must be enough to "raise a right to relief above the speculative level," based on the assumption that the allegations are true (even if doubtful in fact). <u>Id</u>.

The Eleventh Circuit in <u>Watts</u> v. <u>Florida International University</u>, 495 F.3d 1289, 1295-96 (11th Cir. 2007)(citations omitted), summarized the principles established by <u>Twombly</u> as follows:

> The Supreme Court's most recent formulation of the pleading specificity standard is that "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. The standard is one of "plausible grounds to infer." The Court has instructed us that the rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible."

The Eleventh Circuit made clear that it remains the law that on a Rule 12(b)(6) motion to dismiss the pleadings are construed broadly, and the

allegations in the complaint are viewed in the light most favorable to the plaintiff. Watts v. Florida International University, supra, 495 F.3d at 1295.

The Supreme Court has subsequently applied the Twombly plausibility standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009). The Eleventh Circuit has explicated the following "working principles" of those two decisions in American Dental Association v. Cigna Corporation, 605 F.3d 1283 (11th Cir. 2010):

> First, the Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." [Ashcroft v. Iqbal, supra, 556 U.S. 662, 129 S.Ct. at 1949]. Second, restating the plausibility standard, the Court held that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). The Court suggested that courts considering motions to dismiss adopt a "two-pronged approach" in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. Importantly, the Court held in Iqbal, as it had in Twombly, that courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful

conduct the plaintiff would ask the court to infer. Id. at 1951-52 (quoting Twombly, 550 U.S. at 567, 127 S.Ct. at 1972). Finally, the Court in Iqbal explicitly held that the Twombly plausibility standard applies to all civil actions, not merely antitrust actions, because it is an interpretation of Rule 8. Id. at 1953.

## III.

A. Count I of the amended complaint requests a declaration that, under the National Housing Act and its regulations, the plaintiffs are entitled to "troubled loan servicing counseling" before the defendant may initiate a foreclosure lawsuit against them (Doc. 43, pp. 15-17).[3] The defendant argues that this claim is foreclosed by the Anti-Injunction Act, 28 U.S.C. 2283, which provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The defendant argues that the plaintiffs' requested declaration of entitlement to "troubled loan servicing counseling" is essentially a request to enjoin state foreclosure proceedings, in violation of the Anti-Injunction Act

---

[3]Such services, which apply to mortgages insured by the Department of Housing and Urban Development, include counseling, forbearance, modification, and abatement. See, e.g., 24 C.F.R. 203.501, 203.604(e), 203.605.

(Doc. 44, pp. 2-4). See Doc. 43, p. 16, ¶95 (the plaintiffs allege that the defendant "has no right to pursue the ... foreclosure because it failed to provide the [plaintiffs] with troubled loan service counseling"). This is a moot contention because, subsequent to the filing of this motion, the parties dismissed the state court foreclosure action (Doc. 58). Therefore, there is no pending state court action that is affected by the plaintiffs' requested declaration.

The defendant also argues that count I must be dismissed because the plaintiffs have no private right of action for its alleged noncompliance with loss-mitigation procedures under the National Housing Act (Doc. 44, p. 9). This contention is meritorious.

The National Housing Act, 12 U.S.C. § 1701, et seq., ("NHA") and the regulations promulgated thereunder, 24 C.F.R. Part 203, Subpart C, pertain to relations between the mortgagee and the government; they do not give the mortgagor a claim for duty owed, or a remedy for the mortgagee's failure to follow those regulations. See In re Miller, 124 Fed. Appx. 152 (4th Cir. 2005)(no private right of action for failure to comply with NHA's loss mitigation requirements); Roberts v. Cameron-Brown Co., 556 F.2d 356, 361 (5th Cir.1977)( "No evidence exists demonstrating that Congress intended to

create a private cause of action under the National Housing Act"); <u>Coley</u> v. <u>Accredited Home Lenders, Inc.</u>, 2011 WL 1193072 at *2 (E.D. Ark. 2011)(lender's failure to advise of home ownership counseling is not actionable because "the National Housing Act 'govern[s]' relations between the mortgagee and the government"); <u>Mitchell</u> v. <u>Chase Home Finance LLC</u>, 2008 WL 623395 (N.D. Tex. 2008)(under the National Housing Act there is no private right of action available to a mortgagor for a mortgagee's noncompliance).

As the Fourth Circuit explained in <u>In re Miller, supra</u>, 124 Fed. Appx. at 155, the statute does not expressly confer a right upon mortgagors, and there is no basis to conclude that Congress intended to imply a private cause of action. To the contrary, the statute and regulations focus on oversight by the Department of Housing and Urban Development, and a Mortgagee Review Board, which is vested with authority to take action against a noncompliant mortgagee. <u>See e.g.</u>, 24 C.F.R. 203.500 ("[f]ailure to comply [with servicing responsibilities]... will be cause for imposition of a civil money penalty ... or withdrawal of HUD's approval of a mortgagee"); 24 C.F.R. 203.605 ( c) ("A mortgagee that is found to have failed to engage

in loss mitigation as required under ... this section shall be liable for a civil monetary penalty ..." initiated by the Mortgagee Review Board).

The plaintiffs have not cited any contrary authority on this point. In fact, they have not even made a meaningful argument (see Doc. 46, p. 10). Consequently, because the NHA does not authorize a private party to sue a mortgage company for failure to comply with NHA statutory and regulatory procedures, I recommend that count I of the amended complaint be dismissed with prejudice.

B. The defendant also argues that the breach of fiduciary duty claim asserted in count II is not actionable (Doc. 44, pp. 5-7, 9-12). The plaintiffs allege that a fiduciary relationship arose when the defendant "tender[ed] financial advice" to them, and that the defendant breached its fiduciary obligation by using "high-pressure sales tactics" to convince them to obtain a loan they could not afford, and by failing to favorably modify the mortgage or subsequently provide troubled home loan servicing in accordance with the NHA (Doc. 43, pp. 17-19).

As discussed, the plaintiffs may not premise a claim upon a failure to comply with provisions of the NHA, so this contention does not state a cognizable claim for a breach of a fiduciary duty. Furthermore, as the

-13-

defendant contends (Doc. 44, pp. 5-6), a breach of fiduciary duty claim may not be premised upon the defendant's alleged oral promise to modify the mortgage because Florida's banking statute of frauds precludes action on oral credit agreements (Doc. 44, pp. 5-6). Griffiths v. Barnett Bank of Naples, 603 So.2d 690, 692 (Fla. App. 1992)(breach of fiduciary relationship claim founded upon assertion that bank officer made statements or agreements concerning the extension of credit is barred by the banking statute of frauds); see also §687.0304(3)(b), Fla. Stat.(credit agreement may not be implied from a fiduciary relationship between the creditor and debtor). Importantly, the plaintiffs make no attempt in their response to defend the claim for breach of fiduciary relationship on the basis of the NHA or the alleged oral agreement (see Doc. 46, pp. 11-15).

Rather, the plaintiffs argue that the defendant breached its fiduciary duty by "using high pressure sales tactics to pressure [them] to accept certain terms or conditions not right for them" and "convince [them] to obtain a loan they were not able to afford" (Doc. 43, ¶¶102, 106, 107). These allegations are distinct from any purported oral promise to modify the mortgage.

The defendant, citing a number of cases, points out that, "[a]bsent a special pre-existing relationship, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary duty" (Doc. 44, p. 10). The plaintiffs do not dispute this principle, but assert that "a fiduciary duty does exist when the lender exceeds its role as an ordinary lender in its dealings with Plaintiffs and instead offers financial advice, and Plaintiffs place their trust in Defendant" (Doc. 46, p. 11). While the defendant acknowledges that in unusual circumstances a fiduciary relationship can arise between a bank and a borrower (Doc. 44, p. 10), it asserts that the plaintiffs have failed to allege such a special relationship.

Count II itself does not allege any specific facts (see Doc. 43, pp. 17-19). While it does allege legal conclusions, Iqbal makes clear that those conclusions are to be disregarded in evaluating the sufficiency of allegations of a claim. 129 S. Ct. 1949-50. Although the "common allegations" do contain some facts, they are general, they are part of an improper shot-gun pleading, and they are not tied to the claim of fiduciary relationship. Moreover, the few pertinent facts that are alleged do not plausibly show the

special relationship between the plaintiffs and the defendant that is required to establish that the bank was acting as a fiduciary.

Plaintiffs' counsel indicated at the hearing that he could provide more factual detail in support of this claim. Therefore, under the circumstances, it appears appropriate to allow the plaintiffs a final opportunity to amend this claim to add factual detail sufficient to state a cognizable claim.

C. The defendant also seeks the dismissal of count III, which alleges that the defendant fraudulently induced the plaintiffs into executing the original mortgage by falsely promising it would modify the loan on terms favorable to the plaintiff within two months of its execution (Doc. 43, pp. 20-23). This claim is barred by Florida's banking statute of frauds.

Section 687.0304(2), Fla. Stat., known as Florida's banking statute of frauds, requires "[c]redit agreements to be in writing." Coral Reef Drive Land Development, LLC v. Duke Realty Ltd. Partnership, 45 So.3d 897, 903 (Fla. App. 2010).[4] A "credit agreement" is broadly defined as "an agreement to lend or forbear repayment of money, goods, or things in action,

---

[4]"Where federal jurisdiction is based on diversity of citizenship, the substantive law of the forum state applies." Flintkote Co. v. Dravo Corp., 678 F.2d 942, 945 (11th Cir. 1982).

to otherwise extend credit, or to make any other financial accommodation."
§687.0304(1)(a), Fla. Stat.

The purpose of this statute is "to protect lenders from liability for actions or statements a lender might make in the context of counseling or negotiating with the borrower which the borrower construes as an agreement...." Dixon v. Countrywide Financial Corp., 664 F.Supp.2d 1304, 1309 (S.D. Fla. 2009). Consequently, "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." §687.0304(2), Fla. Stat. The statute, furthermore, precludes tort claims that indirectly seek damages for a breach of an oral contract, "even though the defendant at the time of making of the oral contract may have had no intention of performing it." Canell v. Arcola Housing Corp., 65 So.2d 849, 851 (Fla. 1953); see Dixon v. Countrywide Financial Corp., supra, 664 F.Supp.2d at 1308; Puff'N Stuff of Winter Park, Inc. v. Bell, 683 So.2d 1176, 1177 (Fla. App. 1996).

The plaintiffs' contention that the defendant orally promised to modify the mortgage loan on more favorable terms is a credit agreement subject to Florida's banking statute of frauds because it is an agreement to

-17-

make a financial accommodation. §687.0304(1), (2), Fla. Stat.[5] Therefore, in order to be actionable, its terms must be in a signed writing. However, it is undisputed that there was no written agreement to modify the mortgage, much less a signed agreement specifying relevant terms such as the interest rate. Courts have dismissed claims asserting similar contentions on the ground that they are barred by Florida's banking statute of frauds. See, e.g., Dixon v. Countrywide Financial Corp., supra, 664 F.Supp.2d at 1306 (alleged oral promise that bank would reduce the interest rate of the mortgage loan after six years); Locke v. Wells Fargo Home Mortgage, 2010 WL 4941456 at *4 (S.D. Fla. 2010)(alleged oral promise of a loan modification).

In response, the plaintiffs assert that the defendant may not raise a statute of frauds defense on a motion to dismiss (Doc. 46, pp. 4-5). However, it is established that, "[i]f the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)." LeFrere v. Quezada, 582 F.3d 1260, 1263 (11th Cir. 2009).

---

[5]The plaintiffs have also characterized the oral agreement as a promise to refinance the mortgage (Doc. 43, ¶140). Of course, an oral agreement to refinance a mortgage is a credit agreement subject to Florida's banking statute of frauds, as it is an agreement to lend money. §687.0304(1)(a), Fla. Stat.; see Black's Law Dictionary (Abr. 6th ed. 1991), p. 886 (defining refinance as "[t]he discharge of an obligation with funds acquired through the creation of a new debt, often at a different interest rate").

In particular, courts have dismissed claims on statute of frauds grounds pursuant to Rule 12(b)(6), F.R.Civ.P. See, e.g., Dixon v. Countrywide Financial Corp., supra, 664 F.Supp.2d 1304; Bowen v. Wells Fargo Bank, N.A., 2011 WL 3627320 (M.D. Fla. 2011); Locke v. Wells Fargo Home Mortgage, supra, 2010 WL 4941456. Since the plaintiff's amended complaint asserts several claims based on an alleged oral credit agreement, those claims are subject to a statute of frauds defense.

Next, the plaintiffs argue that the banking statute of frauds does not apply in this case because an oral agreement to modify a loan is not a credit agreement (Doc. 46, p. 7). The plaintiffs do not cite any legal authority for this proposition, nor give any reason why a material modification of a mortgage would not need to conform with the statute.

Regardless, the plaintiffs' contention is contradicted by the plain language of the statute, which broadly defines "credit agreement" to include agreements to lend money or "to make any other financial accommodation." §687.0304(1)(a), Fla, Stat. Furthermore, courts have held that claims based on oral promises for loan modifications and loan refinancing are barred by the banking statute of frauds. See Bowen v. Wells Fargo Bank, N.A., supra, 2011 WL 3627320 at **6-7; Locke v. Wells Fargo Home Mortgage, supra, 2011

-19-

WL 4941456 at *4; Dixon v. Countrywide Financial Corp., supra, 664 F.Supp.2d at 1305, 1308; Grueling v. Wells Fargo Home Mortgage, Inc., 690 N.W.2d 757 (Minn. App. 2005); Carlson v. Estes, 458 N.W.2d 123, 128 (Minn. App. 1990)("An oral agreement to lower the interest rate on the loan balance ... is clearly a credit agreement within the definition of [the statute of frauds]" because it is a financial accommodation).[6]

Additionally, the plaintiffs argue that the banking statute of frauds defense is defeated by "their full performance with regard to the[] conditions of this contract" (Doc. 46, pp. 7, 8). Full performance of an oral contract by one party, with performance accepted by the other party, removes the oral contract from the statute of frauds. Fresh Capital Financial Services, Inc. v. Bridgeport Capital Services, Inc., 891 So.2d 1142, 1144 (Fla. App. 2005), J Square Enterprises v. Regner, 734 So.2d 565, 566 (Fla. App. 1999). However, this doctrine is inapplicable because the plaintiffs have not performed their obligations under the alleged oral contract.

---

[6]Minnesota cases are persuasive authority because Florida's banking statute of frauds is patterned upon, and virtually identical to, Minnesota's banking statute of frauds. Collins v. Citrus Nat. Bank, 641 So.2d 458, 459 (Fla. App. 1994); Brenowitz v. Central Nat. Bank, 597 So.2d 340, 342 (Fla. App.1992)

-20-

The plaintiffs argue that "the application [for] a mortgage, the execution of the mortgage documents, and the payment of the monthly payments" constitute full performance of their obligations (Doc. 46, pp. 7-8). However, this conduct is performance of their obligations under the original written mortgage. Thus, the defendant's acceptance of the plaintiffs' monthly mortgage payments does not show the defendant's assent to the alleged oral loan modification because the plaintiffs were obligated to make those payments under the original mortgage.

In contrast, there was no performance at all under the alleged oral agreement. In fact, performance of the plaintiffs' obligations under the alleged oral loan modification agreement was impossible because the terms of the oral agreement were unknown. See Locke v. Wells Fargo Home Mortgage, supra, 2011 WL 4941456.

In Locke, the plaintiff alleged that making four installments of his estimated monthly mortgage payment under a loan modification constituted performance which removed the oral agreement from requirements of the banking statute of frauds. Id. at **1, 4. The Locke court rejected that contention, stating that "[a] financing agreement, indefinite in its terms, is not susceptible to specific performance." Id. at *4.

For these reasons, the full performance doctrine is inapposite in this circumstance. Consequently, that doctrine does not bar application of the banking statute of frauds.

Therefore, the "[p]laintiff[s are] attempting to do exactly what th[e] statute [of frauds] prohibits--that is, enforce a credit agreement that was not reduced to writing and signed by both the creditor and debtor." Dixon v. Countrywide Financial Corp., supra, 664 F.Supp.2d at 1309. I therefore recommend that the fraud claim be dismissed with prejudice because it is based on an alleged oral promise to modify the mortgage.

D.   Count IV of the amended complaint alleges that the defendant committed fraud by falsely "advis[ing the plaintiffs that] the Forbearance Agreement was in their best interest, that the previously-promised modification terms were not in their best interest, and that [the forbearance agreement] was the only option for relief of their financial distress" (Doc. 43, ¶127).   The plaintiffs allege that, but for these misrepresentations, they would have secured a loan from another institution at a more favorable rate (id., ¶131).  The defendant argues that this claim is not actionable because the alleged fraudulent statements are not material facts but, rather, are opinions that are mere puffery (Doc. 44, pp. 14-15).

This claim, like the fraud claim in Count III, is subject to dismissal for failure to comply with the particularity requirement of Rule 9(b), F.R.Civ.P. Dismissal is not recommended on that basis, however, because there is a more fundamental flaw in the claim.

Also, the claim in count IV is properly deemed abandoned because none of the facts upon which it is purportedly based are discussed in the plaintiffs' opposition memorandum. Similarly, there is no response to the defendant's argument that the allegations are not actionable. In all events, the claim is meritless.

Under Florida law, "to constitute actionable fraud, a false representation must relate to an existing or pre-existing fact." Cavic v. Grand Bahama Development Co., Ltd., 701 F.2d 879, 883 (11th Cir.1983); Kramer v. Unitas, 831 F.2d 994, 998 (11th Cir. 1987). Thus, a false statement of opinion, such as occurs in puffing, or a prediction of future events, generally cannot constitute fraud. Cavic v. Grand Bahama Development Co., Ltd., supra, 701 F.2d at 883.

This principle also applies to bankers' representations regarding the affordability and superiority of a particular loan. See, e.g., Silver v. Countrywide Home Loans, Inc., 760 F.Supp.2d 1330, 1342-43 (S.D. Fla.

-23-

2011)("loan was a good deal for her" is an opinion that is not actionable fraud); Thompson v. Bank of New York, 862 So.2d 768, 770 (Fla. App. 2003) (banker's statement that the plaintiff was "financially able to qualify and afford the subject premises" cannot support a cause of action for fraud); McLean v. Countrywide Home Loans, Inc., 2009 WL 5171842 at *4 (E.D. Mich. 2009)(bank representative's alleged representation that plaintiffs would be able to remain "living comfortably financially" and meet mortgage payments constitutes mere contractual "puffing").

Similarly, the defendant's alleged representations that a particular loan was, or was not, in the plaintiffs' "best interest," and that the forbearance agreement was the "only option for relief of their financial distress" are merely opinions. Thus, these comments are not capable of factual verification, but rather, are subject to differing views.

The plaintiffs' failure to present any argument in opposition to the defendant's contention, if not an abandonment of the claim, is at least a concession that the statements are merely non-actionable opinions (see Doc. 46, pp. 16-17). Therefore, I recommend that count IV be dismissed with prejudice.

E.  The plaintiffs allege in count V negligence against the defendant.  In this regard, the plaintiffs argue that the defendant "owed [them] a duty of care to process the loan application in accordance with standard underwriting criteria, service the loan in accordance with industry standards, and otherwise deal in good faith," and that the defendant breached this duty by failing to "collect, examine and evaluate, pertinent information regarding [the plaintiffs'] financial position" (Doc. 43, ¶¶135, 136).

At the hearing, plaintiffs' counsel distilled this claim to the contention that the defendant failed to comport its loan underwriting with best practices and, that, if the defendant had done so, it would have known that the plaintiffs could not afford the mortgage.  The defendant argues that this claim is not actionable because there is no duty to process the loan application in any particular manner (Doc. 44, pp. 10-11).

Under Florida law, an essential element of a claim of negligence is a legal duty owed to the plaintiff.  Clay Electric Co-op, Inc. v. Johnson, 873 So.2d 1182, 1185 (Fla. 2003).  At the outset, this claim of negligence struck me as illogical.  After all, the defendant simply granted the plaintiffs a loan pursuant to their own request.  From the plaintiffs' viewpoint, what is

unreasonable about that? Under the plaintiffs' theory, any business transaction that turns bad can be the subject of a claim of negligence.

In all events, the plaintiffs have not presented any legal authority in which a Florida court has held, or even suggested, that a lender has a legal duty to use reasonable care in the processing of a loan application. To the contrary, federal courts applying Florida law have held that there is no legal duty to process loans competently. Silver v. Countrywide Home Loans, Inc., supra, 760 F.Supp.2d at 1339; Azar v. National City Bank, 2009 WL 3668460 at *3 (M.D Fla. 2009); Matthys v. Mortgage Electronic Registration Systems, Inc., 2009 WL 3762632 at *2 (M.D. Fla. 2009).

In fact, the negligence allegations in Azar mirror the plaintiffs' contention. Thus, Azar, who was unable to make his loan payment, filed a lawsuit against his bank, alleging (among other claims) that the bank negligently "failed to follow sound banking practices in processing his loans and that had it done so, it would have known that he was not qualified to borrow the money." 2009 WL 3668560 at*3. The Azar court rejected this claim, holding that the bank had no tort duty to process the loans competently. Id.

-26-

The plaintiffs respond that "this is a developing area of the law,"
and cite the 1986 Maryland case of Jacques v. First National Bank of
Maryland, 515 A.2d 756, 764 (Md. App. 1986), which held, "under the
circumstances presented by th[at] case," the lender owed its customer a duty
of reasonable care in the processing of a loan application. See Lawyers Title
Ins. Corp. v. Tex Title Corp., 282 F.3d 292, 294 (4th Cir. 2002)(the Jacques
case constitutes a "narrow exception" to the general rule that Maryland does
not recognize a cause of action for negligence arising from a contractual
relationship between two parties). The Jacques case has no application here,
as it is factually inapposite, and the plaintiffs present no cogent argument that
Florida courts would adopt such a holding.[7]

In short, Florida courts have rejected the contention that banks
owe a legal duty to prospective borrowers to process, and consider, loan

---

[7]In Jacques, the borrowers sought a bank loan to purchase a residence. The
borrowers had agreed to a financing provision which required them to increase the down
payment on the residence to whatever amount may be necessary to qualify for a mortgage
loan. The bank allegedly improperly processed the plaintiffs' mortgage loan application,
and determined that they were only qualified to borrow a sum that was significantly less
than the amount they had originally sought, thereby forcing the plaintiffs to secure more
expensive substitute financing. The Jacques court determined that the alleged lack of due
care in processing the application was actionable because the bank was aware of the
"extraordinary financing provisions" and, consequently, the bank undertook a "special
responsibility" when it accepted the plaintiff's loan application for processing. Here, there
is no allegation of a similar circumstance. 515 A.2d at 540.

applications with reasonable care. Moreover, such a duty is contrary to common sense, since in a non-fiduciary relationship each party's duty is simply to look out for its own interest. A violation of a duty of self-interest cannot plausibly give rise to a tort claim.

The defendant also argues, apart from the lack of a legal duty, that the negligence claim is barred by the economic loss rule (Doc. 44, p. 12). That rule bars a tort action when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract. Indemnity Ins. Co. of North America v. American Aviation, Inc., 891 So.2d 532, 536 (Fla. 2004). Accordingly, Florida courts have indicated in circumstances like these that the economic loss rule would defeat a negligence claim. Silver v. Countrywide Home Loans, Inc., 760 F. Supp.2d at 1339-40; Azar v. National City Bank, supra, 2009 WL 3668460 at *3.

In Azar, the court opined that Florida would not adopt the Jacques holding because Florida's economic loss rule would bar a negligence claim based on an implied promise to use due care in the processing of a loan application. Id. The Azar court added that, "[p]resumably, this is why, although the [Jacques] decision is more than 20 years old, the Court has not

-28-

found any cases in which a Florida state or federal court has relied upon Jacques." Id.

In all events, the implications of imposing such a tort duty, and the absence of supporting legal authority, warrant the conclusion that Florida would not hold that a lender has a duty to use care in processing a loan application. Accordingly, I recommend that count V's negligence claim be dismissed with prejudice because there is no cognizable legal duty underlying this contention.

F. Finally, the plaintiffs assert a promissory estoppel claim, which is based solely upon the defendant's failure to modify the plaintiffs' mortgage on favorable terms within two months of its execution (Doc. 43, pp. 25-26). The defendant meritoriously argues that the promissory estoppel claim is barred because it is premised upon an oral credit agreement that is subject to the banking statute of frauds.

Thus, courts have rejected promissory estoppel claims in this circumstance, reasoning that promissory estoppel cannot be used to circumvent the statute of frauds. Coral Reef Drive Land Development, LLC v. Duke Realty Ltd. Partnership, supra, 45 So.3d at 906 n.8; Locke v. Wells Fargo Home Mortgage, 2010 WL 4941456 at *4 (S.D. Fla. 2010); see also

-29-

Tanenbaum v. Biscayne Osteopathic Hosp., Inc., 190 So.2d 777, 779 (Fla. 1966). Significantly, on this point the plaintiffs do not cite any authority indicating that a claim of promissory estoppel can prevail in the face of a violation of a statute of frauds. In fact, in response, the plaintiffs only cite one inapposite case for the general principles of promissory estoppel and assert conclusory statements regarding each element of such a claim. The plaintiffs, in other words, have made no attempt to show that the banking statute of frauds does not bar a claim of promissory estoppel.

In addition, the defendant argues that the promissory estoppel claim is not cognizable because, as a matter of law, the plaintiffs cannot show that their purported reliance on this promise was reasonable. Thus, promissory estoppel is not actionable unless the promise is one "which the promisor should reasonably expect to induce action," a circumstance that turns on, among other things, the definiteness of the promise and the reasonableness of the reliance by the promisee. W.R. Grace & Co. v. Geodata Services, Inc., 547 So.2d 919, 924 (Fla. 1989).

In this case, the alleged oral promise was merely an amorphous pledge to modify, or refinance, the mortgage loan on terms more favorable to the plaintiffs. Thus, the alleged oral promise was entirely indefinite, since no

-30-

terms were specified. Under these circumstances, the plaintiffs could not reasonably rely upon this promise. Id. (rejecting application of promissory estoppel because the promise was not sufficiently definite as to terms and time); Locke v. Wells Fargo Home Mortgage, supra, 2010 WL 4941456 at *4 (reject application of promissory estoppel when promise to modify a mortgage loan was too indefinite as to terms); see also Univ. of Miami v. Intuitive Surgical, Inc., 166 Fed.Appx. 450, 454 (11th Cir. 2006)("Promissory estoppel is not available as a remedy when parties have a written contract addressing the relevant issue[]").

Therefore, because the plaintiffs' promissory estoppel claim is barred by the statute of frauds, and because the plaintiffs cannot, as a matter of law, satisfy the essential elements of this cause of action, I recommend that count VI be dismissed with prejudice.

## V.

For the foregoing reasons, I recommend the plaintiffs' amended complaint be dismissed in its entirety, with leave for the plaintiffs to file a second amended complaint, in compliance with the Federal Rules of Civil Procedure, that asserts only a claim for a breach of a fiduciary duty based

upon the use of high pressure sales tactics. I recommend that the other claims for relief stated in the amended complaint be dismissed with prejudice.[8]

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: DECEMBER 5, 2011

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).

---

[8]The defendant has challenged the six counts on several grounds in addition to the ones that have been addressed. Since solid reasons have been given for dismissal of each of the counts, it is unnecessary to burden this report and recommendation further with a discussion of the additional challenges.